IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA PIPE RECYCLING, INC. | CASE NO. CV F 08-0236 LJO SMS |
| Plaintiff, | **ORDER ON PLAINTIFF'S MOTION FOR DISCHARGE AND AWARD OF ATTORNEY FEES AND COSTS** |
| vs. | (Docs. 77, 91) |
| SOUTHWEST HOLDINGS, INC., et al., | |
| Defendants. | |

## INTRODUCTION

Plaintiff California Pipe Recycling, Inc. ("Cal Pipe") seeks discharge from this interpleader action and a $29,838.72 attorney fees and costs award. Defendants Southwest Pipe Services, Inc. ("Southwest Pipe"), S.W. Pipe Holdings, Inc. ("S.W. Pipe Holdings") and Joseph Briers ("Mr. Briers")[1] oppose Cal Pipe's discharge on grounds that Cal Pipe pursued its interpleader claim in bad faith and that Cal Pipe's requested attorney fees and costs are excessive. Defendant Robert P. Ingrum ("Mr. Ingrum") also opposes Cal Pipe's requested attorney fees and costs as unreasonably excessive. This Court considered Cal Pipe's discharge and attorney fees and costs motion on the record and vacated previously set hearings, pursuant to Local Rule 78-230(h). For the reasons discussed below, this Court will DISCHARGE Cal Pipe from the interpleader portion of this action upon Cal Pipe's payment of the balance Cal Pipe owes and DENIES Cal Pipe attorney fees and costs.

---

[1] Southwest Pipe, S.W. Pipe Holdings and Mr. Briers will be referred to collectively as the "Briers defendants."

1

# BACKGROUND

## The Parties, Their Litigation And Transfer Of Conveyor Equipment

Cal Pipe is a California corporation located in Bakersfield. Mr. Briers is president and sole shareholder of Southwest Pipe, a Texas corporation located in Brazoria County, Texas. Mr. Briers is also the president and sole shareholder of S.W. Pipe Holdings, a Texas corporation which conducts business in Texas.

Mr. Briers and Raymond Briers, Jr. ("Ray Briers") are brothers and were co-owners of defendant Briers Pipe Services Corporation ("Briers Pipe"),[2] a Texas corporation of which Cal Pipe president Kaaren Cambio ("Ms Cambio") was an employee. Briers Pipe conducted pipe cleaning and brokering and leased land and buildings for its business ("Hooper Road Property") from Raymond Briers, Sr. ("Ray Sr."), the father of Mr. Briers and Ray Briers. Mr. Briers and Ray Briers started to disagree over Briers Pipe in late 2002 or early 2003, and Briers Pipe ceased operations at the Hooper Road Property in mid-March 2003. Around that same time, Mr. Briers began to operate as Southwest Pipe at the Hooper Road Property and apparently used the same employees, equipment and other assets which Briers Pipe had used. In August 2003, Southwest Pipe was incorporated. Southwest Pipe contends that it conducted its business separate from Briers Pipe at the Hooper Road Property and that Southwest Pipe and Briers Pipe never operated together.

In September 2003, an apparent disagreement between Ray Sr. and Mr. Briers resulted in Mr. Briers' ejection from the Hooper Road Property and T&R Pipe Services, Inc.'s ("T&R Pipe's") (an entity associated with Ray Briers) lease of the Hooper Road Property to operate a business similar to Briers Pipe but with more emphasis on pipe brokering.

Mr. Briers instituted a Harris County, Texas action entitled *Joseph Briers v. Raymond Briers, Sr, et al.* ("*Briers v. Briers, Sr.*") against Ray Sr. and Ray Sr.'s company, Billco Construction and Pipe Coating, Inc. ("Billco"). The litigation quickly resolved and culminated with a settlement agreement among Mr. Briers, Ray Briers, Ray Sr., Billco and Southwest Pipe to divide assets, many of which appear to have been Briers Pipe's assets. Ray Briers, Ray Sr. and Briers Pipe executed a quit claim in

---

[2] At Cal Pipe's request, the clerk has entered default against Briers Pipe in this action.

2

1  favor of Mr. Briers for scrap pipe and conveyor equipment subsequently transferred to Cal Pipe and at
2  issue in this action. Although identified in the settlement agreement, Briers Pipe was neither a party nor
3  signatory to it. Briers Pipe received nothing for the transfer of assets that may have belonged to it,
4  including the conveyor equipment. The Briers defendants note that Ms. Cambio remained a Southwest
5  Pipe employee.

6  Defendant Robert P. Ingrum ("Mr. Ingrum") is a Texas resident and instituted a Uvalde County,
7  Texas action against Briers Pipe regarding a defaulted hunting license. In November 2003, a default
8  judgment was entered against Briers Pipe after the conveyor equipment at issue here was transferred to
9  Mr. Briers/S.W. Pipe Holdings[3] as part of the *Briers v. Briers, Sr.* settlement. Mr. Ingrum contends that
10 Briers Pipe and other defendants in this action fraudulently transferred Briers Pipe's assets, including
11 the conveyor equipment, during October 2002 to September 2003. Southwest Pipe contends that at all
12 times, the conveyor equipment "was the property of S.W. Pipe Holdings, Inc."

13 Defendant Robbye Waldron ("Mr. Waldron") is a Texas resident and trustee of Mr. Briers'
14 discharged Chapter 7 bankruptcy. Cal Pipe claims that Mr. Briers did not disclose the conveyor
15 equipment at issue here to Mr. Waldron and that the conveyor equipment was potentially part of the
16 bankruptcy estate.

17 **Mr. Briers' Return Of Cal Pipe Stock**

18 In 2005, Mr. Briers became a quarter shareholder of Cal Pipe and agreed to relocate the
19 conveyor equipment at issue here from Houston to California. Ms. Cambio also became a quarter
20 shareholder of Cal Pipe. After shareholder discord, Cal Pipe and Mr. Briers entered into a March 27,
21 2007 agreement entitled "Majority Consent to Action by Directors and Shareholders Without a Meeting"
22 ("consent") by which Mr. Briers resigned as a Cal Pipe officer and director, sold back his Cal Pipe
23 voting shares, and released any interest in Cal Pipe. Pursuant to the consent, Mr. Briers/S.W. Pipe
24 Holdings sold to Cal Pipe for $187,500 the subject conveyor equipment which has been modified and
25 incorporated as a component of Cal Pipe's pipe cleaning machine. Cal Pipe entered into a $167,5000
26 promissory note, dated April 13, 2007 ("promissory note"), to agree to make 24 monthly payments of

---

[3] The parties are unclear whether the conveyor equipment was transferred to Mr. Briers, S.W. Pipe Holdings or both of them.

3

$6,980 to Southwest Pipe.[4] The promissory note states: "This Note is executed in Kern County, California and proper venue for any arbitration or litigation arising out of the same shall be in Kern County, California, only." As of the filing of this action, a $111,660 balance remained on the promissory note. Cal Pipe claims that it invested more than $125,000 to modify the conveyor equipment for its use and that the conveyor equipment remains in Bakersfield.

Attached to the consent is a "Mutual General Release" which includes a choice of venue provision:

> In the event any action, suit, or other proceedings is instituted to remedy, prevent or obtain relief from a breach of the Agreement, proper venue for any such arbitration or litigation shall be Kern County, California, only, and the parties waive any right to change of venue.

By Mr. Briers, S.W. Pipe Holdings signed an acknowledgment and agreement to the consent and its attachments, including the promissory note and mutual general release.

### Mr. Ingrum's Texas Fraudulent Transfer Action

Since November 2006, Mr. Ingrum has pursued a Harris County, Texas action entitled "*R.P. Ingrum v. Briers Pipe Services, Corp., et al.*" to allege that Briers Pipe fraudulently transferred scrap pipe and the conveyor equipment at issue here to Mr. Briers, Ray Briers, Southwest Pipe and/or T&R Pipe and that some or all of the defendants conspired with Briers Pipe to avoid paying Mr. Ingrum's default judgment against Briers Pipe. Mr. Ingrum pursues his fraudulent transfer claims as a judgment creditor of Briers Pipe in connection with the default judgment against Briers Pipe in the Uvalde County, Texas action and pursuant to a breach of contract claim against Briers Pipe stemming from failure to pay a 2000-2001 hunting license.

The January 18, 2008 letter of Mr. Ingrum's counsel alerted Cal Pipe's counsel that Mr. Ingrum claimed an interest in Cal Pipe's payments to Mr. Briers/S.W. Pipe Holdings for the conveyor equipment. The letter noted that assets "were taken from Briers Pipe without due compensation, thereby depriving [Mr. Ingurm] of the benefit of the value of those Assets in satisfying the outstanding judgment

---

[4] Confusion arises in that the promissory note is payable to Southwest Pipe although the consent reflects that S.W. Pipe Holdings is the seller of the subject conveyor equipment. In addition, the other portion of the purchase price was title to $15,250 of segregated pipe.

4

debt." The Briers defendants characterize as a threat the contact of Mr. Ingrum's counsel with Cal Pipe's counsel and that in response, Cal Pipe discontinued to pay Mr. Briers/S.W. Pipe Holdings on the promissory note and filed this action to attempt to interplead potential payments to Mr. Ingrum to address his fraudulent transfer and/or default judgment claims.

Mr. Ingrum contends that he did not learn of Cal Pipe's relationship with the conveyor equipment, Mr. Briers and Southwest Pipe until Mr. Brier's January 8, 2008 deposition. Mr. Ingrum offered to release Cal Pipe from liability for the conveyor equipment's value if Cal Pipe interpleaded promissory note payments into Mr. Ingrum's pending Harris County, Texas fraudulent transfer action.

### Cal Pipe's Claims

On February 15, 2008, Cal Pipe filed this action to allege declaratory relief and interpleader claims in that Cal Pipe "was put on notice that it had purchased assets from Briers Defendants to which other parties claimed a superior title, or a lien against." Cal Pipe alleges that it relied on Mr. Briers' assertions that he sold the conveyor equipment "free of any liens" and that Mr. Briers "may not have held clear title to the conveyor equipment, and that other parties, each adverse to the other, may have an interest in the subject property." Cal Pipe seeks this Court's declaratory relief that:

1. The consent is valid;
2. Cal Pipe is a "good faith purchaser for value, free of any wrongdoing toward any claimants"; and
3. Cal Pipe is discharged from liability of the claims of any defendant provided that Cal Pipe may make monthly promissory note payments to the Court or a party designated by the Court.

To that end, Cal Pipe has interpleaded into this Court its monthly payments and seeks to restrain proceedings against Cal Pipe to recover "amounts due and payable under the note."

### Updated Status Of This Action

This Court's January 15, 2009 order bifurcated Cal Pipe's interpleader claim from Cal Pipe's declaratory relief claim and the Briers defendants' $15,200 counterclaim against Cal Pipe for the value of pipe which they claim Cal Pipe has not transferred pursuant to the agreement for Mr. Briers' return of Cal Pipe stock. Cal Pipe currently pursues its interpleader claim against the Briers defendants, Mr.

Ingrum[5] and Mr. Waldron. Cal Pipe notes that Briers Pipe has declined to participate in the interpleader in that it believes its potential claim is inferior to Mr. Waldron as trustee of Mr. Briers' discharged bankruptcy. Mr. Waldron recently reopened Mr. Briers' bankruptcy to address Cal Pipe's claims in this action and issues arising from Mr. Briers' failure to disclose assets.

## DISCUSSION

### Discharge Of Interpleader

Cal Pipe seeks discharge as the stakeholder in that it "is completely indifferent as to which claimant is owed the proceeds of the promissory note" and "will gladly distribute any unpaid balance under the promissory note to the party adjudicated by this court." The Briers defendants seek to dismiss Cal Pipe's interpleader claim due to Cal Pipe's bad faith and laches. Mr. Ingrum does not oppose Cal Pipe's discharge. Mr. Waldron filed no papers to respond to Cal Pipe's motion for discharge and attorney fees and costs.

"Normally an interpleader action is concluded in two stages, the first determining that the requirements of [interpleader] are met and relieving the plaintiff stakeholder from liability, and the second adjudicating the adverse claims of the defendant claimants . . ." *New York Life Ins. Co. v. Connecticut Development Authority,* 700 F.2d 91, 95 (2nd Cir. 1983); *see Truck-A-Tune, Inc. v. Re,* 856 F.Supp. 77 (D. Conn. 1993). "The primary test for determining the propriety of interpleading the adverse claimants and discharging the stakeholder (the so-called "first stage" of interpleader) is whether the stakeholder legitimately fears multiple vexation directed against a single fund." *Collins v. Teachers Ins. and Annuity Ass'n of America,* 587 F.Supp. 403, 405 (D. R.I. 1984).

There is no meaningful dispute that Cal Pipe meets F.R.Civ.P. 22 interpleader requirements. Despite this Court's prior order that F.R.Civ.P. 22 interpleader requirements are met as to the Briers defendants, they claim, without foundation, that Cal Pipe is "not a neutral third party and filed this interpleader in bad faith." The Briers defendants point to a "history of animosity" and other litigation between Cal Pipe and Mr. Briers to support alleged bad faith and to suggest that Cal Pipe interpleads the promissory note funds to reduce Mr. Briers' cash flow. The Briers defendants previously raised and

---

[5] Although this Court dismissed Mr. Ingrum for lack of personal jurisdiction, Mr. Ingrum recently waived lack of personal jurisdiction and agreed to participate in this action.

failed to succeed on such arguments.

The Briers defendants further fail on their claim that Cal Pipe "is guilty of laches" to warrant denial of its interpleader claim. The Briers defendants point to Cal Pipe president Ms. Cambio who had worked for Briers Pipe and Southwest Pipe and allegedly "was aware of all facts surrounding . . . ownership of the conveyors" and Mr. Briers' bankruptcy. The Briers defendants conclude that Ms. Cambio "was aware of all relevant facts surrounding potential creditors years ago."

The Briers defendants' laches argument is of no avail, especially given that the stake, the promissory note's proceeds, arose no sooner than April 13, 2007, when Cal Pipe executed the promissory note. The Briers defendants provide no legal authority to impute Ms. Cambio's knowledge to Cal Pipe, and nothing suggests that she could have predicted all potential claims to the stake. Moreover, the Briers defendants do not identify specific matters of which she allegedly knew to support laches.

In the absence of meaningful challenge, the interpleader requirements are met. Cal Pipe will be relieved from liability as stakeholder upon its payment of the balance owed on the promissory note. The defendants' adverse claims remain for this Court's determination.

**Attorney Fees And Costs**

Cal Pipe requests $29,838.72 attorney fees and costs incurred to pursue this action. The Briers defendants and Mr. Ingrum contend that such fees and costs are unreasonably excessive in that they could have been avoided had Cal Pipe pursued an interpleader action in Texas.

"The amount of fees to be awarded in an interpleader action is committed to the sound discretion of the district court." *Trustees of the Directors Guild of America-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 426 (9th Cir. 2000) (citing *Schirmer Stevedoring Co. v. Seaboard Stevedoring Corp.*, 306 F.2d 188, 194 (9th Cir. 1962)). Attorney fees for interpleader plaintiffs "recognizes that by bringing the action, the plaintiff benefits all parties 'by promoting early litigation on the ownership of the fund, thus preventing dissipation.'" *Tise*, 234 F.3d at 426 (quoting *Schirmer*, 306 F.2d at 193). Attorney fees may be awarded in recognition that the interpleader plaintiff "often comes by the asset innocently and in no way provokes the dispute among the claimants." *In re Mandalay Shores Cooperative Housing Association, Inc.*, 21 F.3d 380, 383 (11th Cir. 1994).

1    Given that the interpleader plaintiff "is supposed to be disinterested in the ultimate disposition
2    of the fund, attorneys' fees awards are properly limited to those fees that are incurred in filing the action
3    and pursuing . . . release from liability, *not* in litigating the merits of the adverse claimant's positions."
4    *Tise*, 234 F.3d at 426.  Generally, interpleader plaintiff attorney fees are restricted:

> The remedy of interpleader should, of course, be a simple, speedy, efficient and economical remedy. Under ordinary circumstances there would be no justification for seriously depleting the fund deposited in court by a stakeholder through the allowance of large fees to his counsel. The institution of a suit in interpleader, including the depositing of the fund in the registry of the court and the procuring of an order of discharge of the stakeholder from further liability, does not usually involve any great amount of skill, labor or responsibility, and, while a completely disinterested stakeholder should not ordinarily be out of pocket for the necessary expenses and attorney's fees incurred by him, the amount allowed for such fees should be modest.

*Hunter v. Federal Life Ins. Co.,* 111 F.2d 551, 557 (8th Cir. 1940).

"Compensable expenses" include preparation of the complaint and an order to discharge the interpleader plaintiff and obtaining service of process on the claimants. *Tise*, 234 F.3d at 426-427. Since attorney fees are paid from the interpleaded fund, there is "an important policy interest" that the fee award does not deplete the fund at the expense of the party entitled to it. *Tise*, 234 F.3d at 427. Fee awards for interpleader plaintiffs "typically are quite minor and therefore do not greatly diminish the value of the asset." *Mandalay Shores*, 21 F.3d at 383. The interpleader plaintiff bears the burden to establish entitlement to attorney fees. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933 (1983); *Tise*, 234 F.3d at 427. "Plaintiff's counsel . . . is not required to record in great detail how each minute of his time was expended.  But at least counsel should identify the general subject matter of his time expenditures." *Hensley*, 461 U.S. at 437, n. 12, 103 S.Ct. 1993. "Where the documentation is inadequate, the district court is free to reduce an applicant's fee award accordingly." *Tise*, 234 F.3d at 427.

Cal Pipe supports its requested attorney fees and costs in that it "has been forced to litigate a matter not of its own making" and has "done nothing to aggravate any dispute" among the claimant defendants.  Cal Pipe praises itself for endeavoring "to bring all the claimants to the table, to initiate settlement talks amongst them, and . . . to insure that all potential and realized claimants are in the case." Cal Pipe argues that challenges to this Court's jurisdiction were "wasteful of attorney's fees."  Cal Pipe concludes that its requested $29,838.72 attorney fees are reasonable given its diligence "to protect the

stake" and claimants and potential claimants.

The Briers defendants and Mr. Ingrum concede that this court has discretion to award Cal Pipe attorney fees and costs but challenges Cal Pipe's "one page invoice" (filed with its moving papers) which lacks hours worked, services performed, and information to determine how the requested figure is calculated. The Briers defendants and Mr. Ingrum contend that without such information, determination of the reasonableness of the requested attorney fees and costs is "impossible" to render the requested attorney fees and costs excessive and "patently unreasonable." The Briers defendants also question whether Cal Pipe is a disinterested stakeholder given other litigation with Mr. Briers and Southwest Pipe.

With its reply papers, Cal Pipe submits 10 pages of itemized billings. The billings include cryptic notations, such as "Draft correspondence," "Legal Research," "Receive message," "Review documents," and "Opposing counsel conference." The billings fail to substantiate what was done for which portion of this action. Cal Pipe's counsel fails to explain meaningfully why he delayed to provide itemized billings until Cal Pipe's reply papers. This Court's practice is to disregard matters first raised in reply papers in that a moving party's attempt to introduce new facts or different legal arguments in reply papers is improper. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 894-895, 110 S.Ct. 3177, 3192 (1990) (court has discretion to disregard late-filed factual matters); *but see also Glenn K. Jackson v. Roe*, 273 F.3d 1192, 1201-1202 (9th Cir. 2001) (district court's discretion to consider issue raised for first time in reply brief).

In short, Cal Pipe fails to substantiate a nearly $30,000 attorney fees and costs award, which would deplete more than 25 percent of the stake. Cal Pipe provides nothing to demonstrate how its attorney devoted time to "compensable expenses" for an interpleader plaintiff seeking discharge. Cal Pipe's reliance on vague, belated billings in misplaced. Cal Pipe's only meaningful support is its counsel's declaration that he charges "a reasonable rate for my services of $250.00 per hour." Cal Pipe provides insufficient information to permit this Court to exercise discretion to award attorney fees and costs. This Court is not in a position to decipher compensable expenses for Cal Pipe's interpleader efforts.

Moreover, the nearly $30,000 requested attorney fees and costs appear to address matters beyond

9

those for which fees are awarded typically in interpleader actions. This Court is aware that Cal Pipe opposed multiple motions to dismiss based on lack of jurisdiction. However, Cal Pipe chose this forum and could have avoided such motions had it filed its interpleader action in Texas, where Cal Pipe could have pursued its interpleader claim more economically. Mr. Ingrum correctly notes that Cal Pipe "maintained an adversarial position by forcing the stakeholders, who were all Texas residents, into a foreign jurisdiction and spending an enormous amount of the parties' , as well as this Court's, time and effort fighting to establish jurisdiction in California." This Court's determination that it has jurisdiction to address the adverse claims does warrant a depletion of the stake sought by Cal Pipe in this venue. This Court will not deplete the stake excessively and construes Cal Pipe's lack of sufficient documentation as its concession that Cal Pipe seeks attorney fees and costs beyond those typically awarded to discharge an interpleader plaintiff.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. Upon Cal Pipe's payment of the balance owed on the promissory note, will DISCHARGE Cal Pipe from the interpleader portion of this action and will RELIEVE Cal Pipe from liability as stakeholder;[6]
2. DENIES Cal Pipes an award of attorney fees and costs;
3. SETS a status telephonic conference for April 8, 2009 at 8:30 a.m. at which the parties shall appear by arranging a conference call and adding the Court at (559) 499-5680; and
4. ORDERS the parties, no later than April 1, 2009, to file and serve brief status reports to address potential settlement and how to proceed with this action.

IT IS SO ORDERED.

Dated:   February 19, 2009              /s/ Lawrence J. O'Neill
                                        UNITED STATES DISTRICT JUDGE

---

[6] Cal Pipe may elect to pay in advance the balance owed on the promissory note and so inform this Court.