**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CALIFORNIA PIPE RECYCLING, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-2502 |
| | § | |
| SOUTHWEST HOLDINGS, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

In this interpleader action, the disputed funds are the proceeds from the sale of a pipe conveyor once owned by Briers Pipe Services, Inc., ("BPS") to California Pipe Recycling, Inc.  A related lawsuit is proceeding in Texas state court.  In the state court suit, Robert Ingrum alleges that he has a judgment against BPS and that BPS fraudulently transferred assets—including the pipe conveyor—to Joe Briers to avoid paying that judgment.  Joe Briers later sold the pipe conveyor to California Pipe, a bona fide transferee.  Joe Briers has filed for Chapter 7 bankruptcy protection. The Texas state court has not yet decided whether the transfer from BPS to Joe Briers was fraudulent.  The parties in this case have asked this court to assume that the transfer is fraudulent and based on that assumption, to decide whether Ingrum or Joe Briers's Chapter 7 bankruptcy trustee has the prior claim to the interpleaded funds.

Ingrum and the trustee have filed cross-motions for summary judgment.  (Docket Entry Nos. 116, 119).  Both have drawn responses.  (Docket Entry Nos. 119, 120).  Ingrum has replied in support of his motion,  (Docket Entry No. 120), and the trustee has chosen not to reply, (Docket Entry No. 121).  Based on the motions, responses, and reply; the factual record; and the applicable

law, this court grants Ingrum's motion for summary judgment and denies the trustee's motion. A status conference is set for **January 19, 2010, at 10:00 a.m** in Courtroom 11-B.

The reasons for these rulings are explained below.

## I.   Background

The pending motions present the legal issue of the effect of BPS's fraudulent transfer of the pipe conveyer to Joe Briers. Ingrum and the trustee ask this court to decide their cross-motions on a largely agreed or assumed set of facts. Joe Briers and his brother Ray Briers co-owned BPS, a pipe cleaning and brokering business. BPS leased property owned by Ray Briers, Sr. The brothers began "having disagreements," and BPS discontinued operations in March 2003. (Docket Entry No. 116 at 5). Southwest Pipe Services, Inc, then registered as an assumed name of Joe Briers's wife (and later incorporated by Joe Briers), began operating at the same location using BPS assets, personnel, and equipment. (*Id.*).

On April 8, 2003, Joe Briers filed for Chapter 7 bankruptcy protection. In the bankruptcy proceeding, Joe Briers declared that he had no assets. The bankruptcy proceeding closed on July 30, 2003. (Docket Entry No. 119 at 3).

In September 2003, Ray Briers, Sr. ejected Joe Briers from the pipe facility. Ray Briers, Jr. then began operating a similar business on the premises. Joe Briers sued his father and his father's company, Bilco Construction & Pipe Coating, Inc. The suit was resolved by a settlement agreement. The agreement, signed by both brothers, Ray Briers, Sr., Southwest Pipe, and Bilco, divided assets, including the BPS assets, among the various parties. (Docket Entry No. 116 at 5). Ingrum alleged in his state court pleadings that this agreement was signed in October 2003. (Docket Entry No. 119, Ex. 1 at 2).

Ingrum sued BPS in Texas state court for failing to pay for a hunting lease in 2000 and 2001. In November 2003, Ingrum obtained a default judgment against BPS. (Docket Entry No. 116 at 4-5). As of May 21, 2009, Ingrum valued the judgment debt, including postjudgment interest, at approximately $142,000. (Docket Entry No. 119, Ex. 1 at 3). Ingrum sued BPS in Texas state court, alleging that BPS fraudulently transferred assets to Joe Briers and/or Southwest Pipe to avoid paying the judgment debt to Ingrum. (*Id.*). The allegedly transferred assets were the pipe conveyor, some used pipe valued at approximately $100,000, and several thousand dollars worth of equipment. (Docket Entry No. 116 at 5).

In March 2007, Joe Briers (or a company owned by him) sold the pipe conveyor at issue to California Pipe. California Pipe signed a promissory note agreeing to make the payments to Southwest Pipe, which Joe Briers owned. Both Ingrum and Joe Briers's Chapter 7 trustee claim the sales proceeds. Because of the competing claims, California Pipe filed this interpleader action in the Eastern District of California. The action was transferred to this court. California Pipe has fulfilled its payment obligations, depositing approximately $105,000 into the registry of the court. (Docket Entry No. 119 at 4).

On November 21, 2008, the bankruptcy court reopened Joe Briers's case on the trustee's motion. On March 16, 2009, the trustee filed a notice of assets (based on the sale proceeds for the pipe conveyor) and a request for notice to creditors. Any potential creditors had 90 days from that date to file a proof of claim to the assets in Joe Briers's bankruptcy estate. Ingrum did not file a claim. (*Id.*).

Ingrum and the trustee have filed cross-motions for summary judgment asking this court to resolve their competing claims to the pipe conveyor sale proceeds. For the purpose of deciding these

motions, the parties ask this court to assume that the transfer from BPS to Joe Briers was fraudulent as to Ingrum.  The exact date of the transfer from BPS to Joe Briers is unclear; the parties have asked this court to assume that the transfer occurred sometime before April 8, 2003, the date Joe Briers filed for Chapter 7 bankruptcy protection.

Ingrum argues that because a fraudulent transfer must be treated as never having occurred, BPS—not Joe Briers—owned the pipe conveyor when it was sold to California Pipe.  Ingrum contends that the pipe conveyor was never transferred to Joe Briers and did not become part of his bankruptcy estate, leaving the trustee with no claim to the proceeds from its sale.  (Docket Entry No. 120 at 2-3).  The trustee argues that the bankruptcy estate's interest is superior to Ingrum's because Joe Briers was the record title holder of the pipe conveyor when it was sold to California Pipe, while Ingrum had no equitable or legal title to the equipment.  The trustee also argues that Ingrum has only an unsecured claim to the proceeds of the sale of the pipe conveyor and that although Ingrum was given the opportunity to assert the claim, he did not.  (Docket Entry No. 119 at 5-8).

Each of these arguments is considered below.

## II.    The Applicable Law

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact."  *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

The moving party bears a heavier burden when seeking summary judgment on a claim or defense on which it would bear the burden of proof at trial. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). "[I]f the movant bears the burden of proof on an issue, either because he is

the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Id.* (emphasis in original);  *see also Meecorp Capital Markets LLC v. Tex-Wave Industries LP*, 265 Fed. App'x 155, 157 (5th Cir. 2008) (per curiam) (unpublished) (quoting *Fontenot*, 790 F.2d at 1194).

## III.    Analysis

A debtor's bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case."  11 U.S.C. § 541(a)(1).  Joe Briers's Chapter 7 proceeding commenced on April 8, 2003.  The parties have asked this court to assume that the pipe conveyor was transferred from BPS to Joe Briers before April 8, 2003.  Under that assumption, Joe Briers held legal title to the pipe conveyor on the date his bankruptcy case commenced.  But the parties have asked this court to assume the state court finds BPS's transfer to Joe Briers to have been fraudulent.[1]  The issue is whether, based on these assumptions and the facts in the record, the pipe conveyor proceeds are part of Joe Briers's bankruptcy estate.

Property interests are defined by state law.  *See  Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."); *In re Haber Oil Co.*, 12 F.3d 426, 435 (5th Cir. 1994) ("in the absence of controlling federal bankruptcy law, the

---

[1]    The trustee asserts that because he is not a party to the state court suit, "the bankruptcy estate's rights cannot be adjudicated in that proceeding."  (Docket Entry No. 119 at 2).  The estate's property rights are not being adjudicated in the state court.  Those rights are being determined in this interpleader action, to which the estate is a party.  The judgment in the state court will determine the property relationship between Ingrum and BPS; this court will determine the estate's interest.

substantive nature of the property rights held by a bankrupt and its creditors is defined by state law.").

Ingrum's state-law claim arises under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), TEX. BUS. & COM. CODE § 24.001, *et seq.* For the purpose of deciding the present motions, this court assumes that the state court finds that BPS violated the TUFTA.

TUFTA provides several remedies for a violation. The statute states in part:

> (a) In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in Section 24.009 of this code, may obtain:
>
> > (1) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
> >
> > (2) an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the applicable Texas Rules of Civil Procedure and the Civil Practice and Remedies Code relating to ancillary proceedings; or
> >
> > (3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure:
> >
> > > (A) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;
> > >
> > > (B) appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
> > >
> > > (C) any other relief the circumstances may require.
>
> (b) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

TEX BUS. & COM. CODE § 24.008. Ingrum asks for relief under section 24.008(a)(1), for "avoidance of the transfer. . . to the extent necessary to satisfy [his] claim." (Docket Entry No. 116 at 8-9). As

a judgment creditor, Ingrum asserts the right to levy execution on the pipe conveyor sale proceeds

under section 24.008(b).[2]

Applying a prior—but not substantively different—version of the TUFTA, the Fifth Circuit

concluded:

> Under the Texas Act, a transfer in fraud of creditors is voidable in the
> general sense that good title may be passed to a transferee who does
> not have notice of the fraud, TEX. BUS. & COM. CODE. [former] §
> 24.02(b),[3] and void in the very limited sense that creditors may
> otherwise treat the transferred property as though the transfer had
> never taken place, *see Texas Sand Co. v. Shield*, 31 S.W.2d 48, 55
> (Tex. 1964).

*In re MortgageAmerica Corp.*, 714 F.2d 1266, 1272-73 (5th Cir. 1983); see also *United States v.*

*Chapman*, 756 F.2d 1237, 1240 (5th Cir. 1985) (quoting *MortgageAmerica*, 714 F.2d at 1272-73).

"Under these Texas statutes, 'a conveyance which is found to be fraudulent as to creditors is wholly

null and void as to such creditors,' and 'the legal as well as the equitable title remains in the debtor

for the purpose of satisfying debts.'" *Chapman*, 765 F.2d at 1240 (quoting *Texas Sand Co. v. Shield*,

381 S.W.2d 48, 54 (Tex. 1964)).

Under these cases, assuming that the state court finds that the transfer from BPS to Joe Briers

was fraudulent, the transfer of the pipe conveyor was "wholly null and void" as to Ingrum, BPS's

judgment creditor. To the extent necessary to satisfy BPS's judgment debt to Ingrum, BPS retained

equitable and legal title to the conveyor. Ingrum is entitled to "treat the transferred property as

---

[2]   Ingrum states that it is theoretically possible for interpleader funds to remain once the debt to him is
satisfied. If this were the case, Ingrum states that the funds would not belong to the trustee because Ingrum
would use section 24.008(b) to levy execution on the proceeds of the sale "prior to any other execution."
(Docket Entry No. 120 at 4 n. 4).

[3]   The current statute, TEX. BUS. & COM. CODE § 24.009(a), provides that "a transfer or obligation is not
voidable under Section 24.005(a)(1) of this code against a person who took in good faith and for a reasonably
equivalent value or against any subsequent transferee or obligee." Ingrum is not attempting to void the
transfer to California Pipe, so this provision does not limit his rights.

though the transfer had never taken place."  If the transfer from BPS to Joe Briers did not take place with respect to Ingrum, the trustee cannot claim the proceeds from its sales as part of the bankruptcy estate.

The trustee relies on *United States v. Corpus*, 491 F.3d 205 (5th Cir. 2007), but that case is distinguishable.  *Corpus* involved the criminal forfeiture statute, which requires a person asserting a claim to the disputed property to show a "legal right, title, or interest" in the property that "was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture."  21 U.S.C. § 853(n)(2).  The claimants in *Corpus* asserted a right to real property they had been under contract to buy when the sellers filed for Chapter 13 bankruptcy protection.  As a result of the bankruptcy proceeding and stay, the claimants were prevented from pursuing a lawsuit to obtain possession of the property.  When the bankruptcy stay was lifted, without notifying the claimants, the sellers sold to a third party, who purchased the property using money from selling drugs, giving rise to the forfeiture proceeding.  *Corpus*, 491 F.3d at 207-08.  The Fifth Circuit found that the sale did not give the claimants a right, title, or interest superior to that of the drug trafficking criminal defendant who purchased the property.  Assuming that the transfer to the criminal defendant violated the TUFTA, the court concluded that the claimants were unsecured creditors.  Under forfeiture law, this was not enough to create a "superior" interest.  *Id.* at 210-11.  Acknowledging a defrauded unsecured creditor's right to "set aside the transfer . . . to satisfy the debt owed," the court found that "[e]ven where a defrauded creditor sets aside a transfer as fraudulent, the defrauded creditor does not take legal or equitable title to the fraudulently transferred property.  Instead, legal and equitable title remain with the *debtor* relative to a defrauded creditor."  *Id.* at 211-212 (emphasis added).

9

*Corpus* is distinguishable from the present case.  In *Corpus,* the court "express[ed] no opinion as to whether a judgment creditor has rights superior to a transferee in fraudulently transferred property."  *Id.* at 211 n.3.  Ingrum is a judgment creditor of BPS.  A judgment creditor is given superior remedies to an unsecured creditor under TUFTA.  *See* TEX. BUS. & COMM. CODE § 24.008(b).  Moreover, *Corpus* was a criminal forfeiture case, not a bankruptcy estate dispute.  The claimants in *Corpus* were required to show an interest in the property "superior" to that of the criminal-defendant purchaser.  In the present case, by contrast, Ingrum, the judgment creditor, must show that Joe Briers did not obtain title to the pipe conveyor despite the transfer.  The *Corpus* opinion makes clear that Ingrum has met this burden.  The sale to the drug trafficker, who used drug proceeds to make the purchase, did not give the claimants, who had a contract on the property, a "superior" interest for forfeiture purposes.  But a transfer that is fraudulent as to even an unsecured creditor would allow that creditor to "set aside" that transfer under TUFTA.  *See Corpus*, 491 F.3d at 211-12.  Although setting aside a transfer does not give the unsecured creditor legal or equitable title, because both remain with the debtor, it prevents the debtor from transferring the property or asset.

Ingrum is not arguing that he has title to the pipe conveyor.  Instead, he argues that because the transfer of the pipe conveyor violated TUFTA, this court must treat the transfer from BPS to Joe Briers as if it never happened.  Under that assumption, as to Ingrum, BPS did not transfer the pipe conveyor to Joe Briers before he filed for bankruptcy, the pipe conveyor did not become part of Joe Briers's bankruptcy estate, and Ingrum has an interest in the proceeds superior to that of the Chapter 7 trustee of that estate.[4]

---

[4]   The trustee asserts that because his power under 11 U.S.C. § 544(a)(1) gave him a hypothetical lien on all of the debtor's property on the date the bankruptcy case began, he has rights in the conveyor superior to

10

The remaining issue is whether the pipe conveyor became part of the bankruptcy estate under a reverse alter-ego theory. The argument is that Joe Briers was the reverse alter ego of BPS, making BPS's assets part of Joe Briers's bankruptcy estate. Under Texas law, the reverse alter-ego doctrine has two elements: (1) unity between corporate entity and individual such that the separateness between the two had ceased to exist; and the (2) "failure to disregard the corporate form would be unfair or unjust." *In re S.I. Acqisition, Inc.,* 817 F.2d 1142, 1152 (5th Cir. 1987) (setting forth the standard for traditional alter ego); *see also In re Southmark Corp.*, 95 F.3d 53, 1996 WL 459958, *5-6 (5th Cir. 1996) (per curiam) (unpublished) (applying the same factors in reverse alter ego context).

Ingrum argues that the second prong is not satisfied because viewing Joe Briers and BPS as one would favor BPS and Briers and be unfair to Ingrum as a creditor of BPS. (Docket Entry No. 116 at 14-15). The trustee's response is that he has not asserted a reverse alter-ego theory and that, with respect to Ingrum's summary judgment motion on this issue, fact issues remain. (Docket Entry No. 199 at 5 n.1).

Ingrum's position is persuasive. The alter-ego test requires more than simply a disregard of the corporate form, such that the corporation and the individual are no longer separate. There must also be harm to creditors that could not be addressed without disregarding the corporate form. It is improper to "pierce" an individual to reach his alleged alter-ego corporation when to do so would benefit the individual or his creditors at the expense of the shareholders or creditors of the

---

Ingrum and is entitled to avoid any claim made by Ingrum to the conveyor proceeds. Under the assumptions made for the purpose of these cross-motions, the conveyor was fraudulently transferred as to Ingrum. Under these assumptions, the pipe conveyor never became part of the bankruptcy estate. The trustee would have no right to use his § 544 power to assert a right to the pipe conveyor proceeds as to Ingrum. For the same reason, it is not relevant that Ingrum did not make a claim to the proceeds in the Joe Briers bankruptcy proceeding. Those proceeds were not part of the estate.

corporation. *See Lifshutz v. Lifshutz*, 61 S.W.3d 511, 516-18 (Tex. App.—San Antonio 2001, pet.

denied) (reversing, under Texas law, the trial court's decision to allow wife to use the reverse alter-

ego doctrine in a divorce case; the husband's misuse of separate property corporations for his

personal benefit had actually increased the value of the community property); *In re Moore*, 379 B.R.

284, 295-96 (Bankr. N.D. Tex. 2007) ("Thus, in the absence of any Texas Supreme Court case

clearly adopting reverse veil piercing, and in the absence of Texas or Fifth Circuit authority that

clearly defines the specific parameters for its use, this court will incorporate for the case at bar the

views expressed by certain courts from other circuits–namely, that reverse veil piercing should only

be applied when it is clear that it will not prejudice non-culpable shareholders or other stakeholders

(such as creditors) of a corporation.").  As the Fifth Circuit observed in *Southmark*, "the party

seeking to disregard the corporate form is the very party that abused that form in the first place.

Applying this equitable remedy under these circumstances would seem to disserve its purpose,

which is 'to prevent use of the corporate entity as a cloak for fraud or illegality or to work an

injustice.'" *Southmark*, 1996 WL 459958, at *6.  So-called reverse veil-piercing is available only

when necessary to prevent fraud or illegality or injustice.  It would be inappropriate as a matter of

law in this case, when the effect would be to increase the value of Joe Briers's bankruptcy estate at

the expense of BPS's judgment creditor, Ingrum.

      If the state court finds that BPS fraudulently transferred the pipe conveyor to Joe Briers to

avoid Ingrum's judgment debt, that transfer is "wholly null and void" as to Ingrum.  As a result, the

pipe conveyor and its sale proceeds did not become part of Joe Briers's bankruptcy estate.  And the

record provides no basis for finding that the pipe conveyor became Joe Briers's property under the

reverse alter-ego doctrine.  If the state court finds that BPS transferred the conveyor to Joe Briers

before April 8, 2003 and that transfer violated TUFTA, Ingrum has priority over the trustee to the interpleaded funds.[5]

## IV.   Conclusion

Ingrum's motion for summary judgment is granted and the trustee's motion for summary judgment is denied.  A status conference is set for **January 19, 2010, at 10:00 a.m.** in Courtroom 11-B.

SIGNED on January 5, 2010, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

---

[5]   Because of this conclusion, there is no need to address Ingrum's alternative argument that he is entitled to a constructive trust.